IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

```
ZORAN PERISIC,                     )
                                   )
Plaintiff,                         )
                                   )
vs.                                )    No. 1:11-CV-00337
                                   )
PIZZA HUT OF FORT WAYNE, INC.,     )
                                   )
Defendant.                         )
```

**OPINION AND ORDER**

This matter is before the Court on the Motion for Summary Judgment filed by Defendant, Pizza Hut of Fort Wayne Inc. ("Pizza Hut") on June 25, 2012. For the reasons set forth below, the Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART.** Summary Judgment is **GRANTED** on Plaintiff's Retaliation claim and **DENIED** on Plaintiff's FMLA Interference claim.

**BACKGROUND**

On September 23, 2011, Plaintiff Zoran Perisic ("Perisic") sued his former employer, Defendant Pizza Hut. Perisic alleges that Pizza Hut interfered with his right to take leave pursuant to the Family Medical Leave Act (the "FMLA"), 29 U.S.C. § 2601, *et sec*. and retaliated against him for asserting that he was entitled to receive FMLA benefits.

1

Pizza Hut moved for summary judgment. Perisic, who is represented by counsel, requested and was granted an extension of time to file his response brief. No response brief was filed. Accordingly, the motion is ripe for adjudication.

**DISCUSSION**

The standards that generally govern summary judgment motions are familiar. Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant. *Anderson*, 477 U.S. at 255; *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406 (7th Cir. 2009).

According to Rule 56:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made

> for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c). Furthermore, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may ... consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it..." Fed. R. Civ. P. 56(e)(2),(3). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (citing *Anderson*, 477 U.S. at 248).

Where a party bears the burden of proof on a particular issue, the party may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine dispute requiring a trial. *See Beard v. Whitley Cnty. REMC*, 840 F.2d 405, 410 (7th Cir. 1988); *Hickey v. A.E. Stanley Mfg.*, 995 F.2d 1385, 1391 (7th Cir. 1993). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate.

Facts

Because the Plaintiff did not respond to the instant motion to dismiss, the well-supported facts presented in the Defendant's Statement of Material Facts are accepted as true for purposes of this motion. This Court has also considered certain additional facts in the record, as permitted by Federal Rule of Civil Procedure 56(c)(3).

Perisic first worked at the Pizza Hut located at 6040 Covington Road in 1998 as a delivery driver. (Deposition of Zoran Perisic ("Perisic Dep.") at 10). Perisic worked at the restaurant less than 2 years. (*Id.*). Perisic then left his employment with Pizza Hut to open his own Bosnian Club. (*Id.* at 11-12). The Bosnian Club was not profitable and the business was closed in 2005. (*Id.*). After Perisic stopped operating the Bosnian Club, he returned to Pizza Hut and filled out an application. (*Id.* at 23-24, Ex. A). Perisic interviewed with the store manager and was hired. (*Id.* at 23, 27-28).

On December 10, 2006, Perisic received a review in which he received an "F" in phone skills and was told that he must shave daily and improve his appearance. (*Id.* at 33-34, Ex. B). In March 2008, Perisic received a written warning about his cell phone going off and the fact that he talked on his cell phone in the kitchen. (*Id.* at 39-40, Ex. E).

4

In December 2009, Perisic approached management at the restaurant and asked for time off. (Affidavit of Jeni Hamilton ("Hamilton Aff.") ¶ 4). In late December 2009, Perisic specifically sought out Assistant Manager Jeni Hamilton and told her that his wife was having surgery the next week and that he would need a few days off to be with her after the surgery. (*Id.* at ¶¶ 2, 4). Perisic never told Hamilton that his wife's surgery was for cancer but simply told her that the surgery was for "female problems." (*Id.* ¶ 5). Hamilton referred Perisic to Brad Corns ("Corns"), the Manager of the restaurant, who had the authority to grant time off. (*Id.* ¶ 6). Similarly, Perisic approached Johanna Esquivel ("Esquivel"), another Assistant Manager at the restaurant, and mentioned to her that his wife was having surgery and he would like a few days off to be with her at home. (Affidavit of Johanna Esquivel ("Esquivel Aff.") ¶ 2, 4). Again, Perisic never mentioned that his wife had cancer, only that she had some "female problems" that "needed to be taken care of." (*Id.* at ¶ 4). Perisic never suggested to Esquivel that this was a serious surgery that would require anything more than a short convalescence. (*Id.* ¶ 5). Like Hamilton, Esquivel referred Perisic to Corns for a decision on his request. (*Id.* ¶ 6).

Perisic's and Corns' versions of of the conversation between them differ substantially. Corns acknowledges that Perisic asked

for days off. (Affidavit of Brad Corns ("Corns Aff.") ¶¶ 4, 7, 8). According to Corns, Perisic did not suggest to Corns that the surgery was for cancer but that the surgery was for "female stuff," consistent with what Perisic told Esquivel and Hamilton. (*Id.* ¶ 5). Corns did not inquire any further because he did not want to pry and Perisic did not suggest to Corns that his wife needed anything more than a short convalescence. (*Id.* ¶ 5). Corns was familiar with FMLA but did not discuss it with Perisic because, according to Corns, Perisic did not request any additional time off other than what was granted to him and because Perisic never suggested to Corns that his wife's surgery was for cancer or another serious illness. (*Id.* ¶ 11).

Perisic, however, claims that he told Corns that his wife needed surgery for cancer and he needed time off. (*Id.*). More specifically, Perisic's deposition testimony was that:

> [H]er diagnosis was very bad with the cancer, all involved with colon, in colon and ovarian, whatever. Then I came and asked him, I told him everything. I said, "Brad, my wife has cancer. She needs, she has surgery and I need at least seven days off." He said, "No, you cannot get nothing, nothing." I said, any kind of, you know, give me - I had a rightful two weeks for vacation I had for days off. I had family leave. He said, "You're not going to get nothing because you are not a full-time driver. You cannot get nothing." He just and leave. After this, I ask him again. And I said, "You know that next Monday is going to be dead or alive for my wife." He said,

6

> "I don't care, whatever." In front of
> everybody. I said, "Okay." And I ask other
> people, "What can I do? I'm not going leave
> my wife by herself." This surgery was over
> five hours. And when he came he says, "You
> can get three days. If you're not going back
> four days, you are fired." That's all that
> day.

(*Id.*).[1]

It is undisputed that the surgery occurred on Monday, December 28, 2009. (Perisic Dep. at 52). Originally, Perisic's wife was going to be in the hospital for three or four days but she ended up being in the hospital for eight days. (*Id.* at 56). It is also undisputed that Perisic asked for days off, although there is a disagreement regarding whether he received what he asked for. (*Id.* at 51). Perisic claims that he asked for seven days off starting December 30, 2009, and he was told by Corns that he could have three days off and that if he did not return on the fourth day he would be terminated. (Perisic Dep. at 49-51). Corns claims that Perisic was granted the leave he requested. (Corns Aff. ¶¶ 4, 7, 8). It is undisputed that Perisic did not work on Sunday, December 27, 2009, the day before his wife's surgery and a day he would typically have been scheduled to work. (*Id.* at 65-66). Perisic did not work on

---

[1]Defendant also claims that Perisic testified that he did not know what the Family Medical Leave Act was. Defendant points to page 151 of Perisic's deposition to support this fact, but they have not provided that page of the deposition in their exhibits. The Court cannot rely on facts without evidentiary support. Nonetheless, the Court has determined that this fact is not material to the outcome.

7

Monday or Tuesday, December 28, and 29, 2010, which were his scheduled days off. (*Id.* at 67). Then Perisic was given off and did not work on Wednesday, Thursday, or Friday, December 30 and 31, 2009, and January 1, 2010. (*Id.* at 67); (Corns Aff. ¶ 6). Perisic returned to work on January 2, 2010. (Corns Aff. ¶ 7). However, Perisic did not work Sunday, as he typically would have been scheduled, and he did not work the following Monday or Tuesday. (*Id.*).

Perisic returned to work without incident. However, beginning in February 2010, Perisic had work performance issues that ultimately led to his termination. On February 23, 2010, Perisic had two deliveries going in two different directions about fifteen minutes apart. (Hamilton Aff. ¶ 10). Hamilton put both deliveries in for the same time so that Perisic could deliver them together. (*Id.*). A third delivery was going to a location near one of the other two deliveries, but this delivery was not due until almost 45 minutes later. (*Id.*). Perisic asked if he could deliver that order too because he had another going that direction. (*Id.*). Hamilton explained to Perisic that she could not comply with his request because there were several carry out tickets that had to be completed before that delivery. (*Id.*). Perisic continued to stand around and Hamilton had to ask him to leave with the orders or otherwise the current deliveries would be late. (*Id.*). Perisic argued that he would have to

drive an extra 25 miles. (*Id.*). Hamilton responded that she did not care how many miles the deliveries were as long as all the orders were completed timely. (*Id.*). Perisic was argumentative and insubordinate. (*Id.*). Hamilton wrote a documentation memorandum regarding the incident of February 23, 2010, and gave it to Corns. (*Id.* ¶11, Ex. 1; Corns Aff. ¶ 12, Ex. 1). Esquivel, another Assistant Manager, signed the memorandum. (Esquivel Aff. ¶ 10, Ex. 1).

Four days later, on February 27, 2010, Perisic was observed by Esquivel telling another driver, Mike, that Mike had to take 2 runs in sector H-06 when Mike already had 3 runs going in the opposite direction. (Hamilton Aff. ¶ 12; Esquivel Aff. ¶¶ 12-13, Ex. 2). Perisic chose not to take the next deliveries in sequence and passed them to Mike without notifying or consulting with any manager to help with dispatching issues. (*Id.*). Mike complied with Perisic's directions and headed out to make his deliveries because he was the newest driver. (Hamilton Aff. ¶ 12). Unfortunately, nearly all Mike's deliveries were late. (*Id.*). As a result, Pizza Hut issued over $160.00 of customer promotion to preserve goodwill. (*Id.*). In addition, a few employees had to remain on the clock after their shifts. (*Id.*). Hamilton wrote a documentation memorandum regarding the incidents of February 27, 2010, and gave it to Corns. (*Id.* ¶ 13, Ex. 2).

Esquivel also signed the memorandum as it accurately reflected the events of that evening. (Esquivel Aff. ¶¶ 12-13, Ex. 2).

Due to Perisic's performance problems in February 2010, his hours were reduced until his performance improved. (Corns Aff. ¶ 14). On or about March 4, 2010, Perisic received a written warning for the incidents of February 2010. (*Id.* ¶ 15, Ex. 3). The warning noted that the next corrective action would be termination. (*Id.*). On March 27, 2010, Corns received a complaint from a truck driver who said that Perisic had been weaving in and out of traffic in front of his semi-truck. (*Id.* ¶ 17). Perisic was spoken to about driving safely and a note made for his file. (Id. ¶ 17, Ex. 4). Also on March 27, 2010, Perisic took a starter check with no name of the customer in violation of store policy. (*Id.* ¶ 16). This policy had been communicated to all delivery drivers including Perisic. (*Id.*). The check bounced. (*Id.*). On March 31, 2010, Corns explained to Perisic that he took a starter check in violation of store policy. (*Id.* ¶ 18). Perisic started arguing about his hours being cut and Corns explained to him why that had occurred and said that the discussion was over. (*Id.*). Perisic admits that Corns told him that he did not want to discuss the matter any further, and Persic followed him and continued to ask Corns about the reduced hours. (Perisic Dep. at 107). Perisic persisted in arguing

about his hours at which point he was terminated.  (Corns Aff. ¶ 18).

Pizza Hut asserts that Perisic was terminated due to the ongoing series of problems related to his work performance. (Corns Aff. ¶ 19; Hamilton Aff. ¶ 14; Esquivel Aff. ¶ 14). Corns, Hamilton and Esquivel each assert that Perisic's termination had nothing to do with his request for time off in December of 2009.  (Corns Aff. ¶ 19; Hamilton Aff. ¶ 14; Esquivel Aff. ¶ 14).

Pizza Hut has a policy of permitting leave when requested for medical leave or in compliance with the FMLA.  (Affidavit of Terry Auld ("Auld Aff.") ¶ 3).  Pizza Hut has had many employees who have taken FMLA or medical leave and returned to work.  (*Id.* ¶ 4, Ex. 1).

FMLA Interference Claim

To prevail on an FMLA interference claim, an employee need only demonstrate that his employer has denied him leave to which he was entitled under the act; he need not show discriminatory intent.  *Burnett v. LFW, Inc.*, 472 F.3d 471, 477 (7th Cir. 2006). Perisic bears the burden of proving that:  (1) he was eligible for FMLA protection; (2) his employer was covered by the FMLA; (3) he was entitled to FMLA leave; (4) he provided sufficient

11

notice of his intent to take leave; and (5) his employer denied him benefits to which he was entitled. *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). *See also Simpson v. Office of Chief Judge of Circuit Court of Will County*, 559 F.3d 706, 712 (7th Cir. 2009). The first three elements, at this juncture, are not in dispute.

With regards to the notice requirement, when the employee does not give his employer proper notice, the employer does not have a duty to provide FMLA leave. *Righi v. SMC Corp.*, 632 F.3d 404, 408 (7th Cir. 2011). The employee does not have to expressly assert FMLA rights, his "duty is merely to place the employer on notice of a probable basis for FMLA leave..." *Aubuchon v. Knauf Fiberglass*, GmbH, 359 F.3d 950, 953 (7th Cir. 2004). Defendant argues that Perisic did not provide sufficient notice of his intent to take leave.

Pizza Hut alleges that the only notice given by Perisic was that he needed a few days off because his wife had "female problems." According to Pizza Hut, Perisic spoke to two assistant managers and the manager but never mentioned the nature of the problem, or a need for more than a short time off. The Court does not have the benefit of a response brief from Perisic, but it is impossible to review the evidence supporting Pizza Hut's position without noticing the clear statement of Perisic

that he did in fact provide notice that his wife had cancer and that the circumstance was serious.

Pizza Hut seems to believe that Perisic's statement is less than clear. Pizza Hut points to language in *Bailey v. Pregis Innovative Packaging, Inc.*, 2009 WL 2970395, *4 (N.D. Ind. 2009), noting that a plaintiff's "cloudy recall" that "contradicts all of the evidence in the record" is "too flimsy to create an issue of fact." But the facts of this case are easily distinguishable from *Bailey*. In *Bailey*, the plaintiff testified two years after the events that she "thinks maybe" she gave notice that she needed FMLA leave for certain dates. *Id.* In contrast to the plaintiff in *Bailey*, Perisic testified in no uncertain terms that he *did* provide notice. The fact that he may have been unaware of what precisely the FMLA was does not change this testimony. Perisic's testimony is simply not the same as the wishy-washy or "cloudy" testimony at issue in *Bailey.*

Pizza Hut minimizes the importance of Perisic's statement, essentially asking this Court to weigh the evidence and find Corns' testimony more credible than Perisic's testimony. But, this Court must view all facts in the light most favorable to the nonmovant. A reasonable jury could accept Perisic's rendition of the facts over that of Corns. Accordingly, there is a genuine

13

issue of material fact with regards to whether the notice requirement was met.

Pizza Hut argues that, even if notice were sufficient, the FMLA interference claim would still fail because Pizza Hut did not deny Perisic the requested leave. Pizza Hut relies on Corns' statement that he gave Perisic the days off that he requested. But, Perisic has testified that he asked for seven days off, his wife's surgery was December 28, 2009, and that he was required to work on January 2, 2010. Although the damages for being forced to work one day when seven days were requested off may be insignificant, the record before this Court demonstrates that there is a genuine issue of material fact with regards to whether Perisic received the time off that he requested.

FMLA Retaliation Claim

Next, Perisic claims Pizza Hut retaliated against him for the exercise of his rights under the FMLA. Under the FMLA, it is unlawful for an employer to discharge or discriminate against an individual for inquiring about FMLA leave or raising an FMLA interference claim. 29 U.S.C. § 2615(a)(2). An employee alleging retaliation under FMLA may do so under the direct or indirect method of proof. *Smith*, 560 F.3d at 702.

Under the direct method, Perisic must show that Pizza Hut intended to punish him for requesting FMLA leave. *Id.* This requires a near admission or a convincing mosaic of circumstantial evidence. *Koszola v. Board of Educ. of City of Chicago*, 385 F.3d 1104, 1109 (7th Cir. 2004). Furthermore, Pizza Hut is entitled to prevail on summary judgment if they can present unrebutted evidence that they would have taken an adverse employment action even in the absence of retaliatory motive. *Burnett v. LFW, Inc.*, 472 F.3d 471, 481 (7th Cir. 2006).

Any retaliation claim based on direct evidence fails because Perisic has not established any intent to retaliate on the part of Pizza Hut. Again, Perisic has not filed a response and has not produced any direct evidence whatsoever. While Perisic's complaint does allege that the timing of Pizza Hut's adverse actions against him were suspicious, suspicious timing alone is not enough to support a claim of retaliation. *See Leonard v. Eastern Illinois University*, 606 F3d 428, 432-33 (7th Cir. 2010)(finding that suspicious timing alone is insufficient to support a claim of retaliation under Title VII).

Under the indirect method, Perisic must produce evidence that he was treated differently from similarly situated employees who did not request FMLA leave, even though he was performing his job satisfactorily. *Smith*, 560 F.3d at 702. If Perisic

establishes a prima facie case of retaliation, then the burden shifts to Pizza Hut to demonstrate a legitimate, nondiscriminatory reason for Perisic's termination. *See Caskey v. Colgate-Palmolive Co.,* 535 F.3d 585, 593 (7th Cir. 2008). Then, Perisic must demonstrate that the stated reasons are pretextual. *Id.*

Any indirect claim fails because Perisic has not demonstrated that he was treated differently than any other Pizza Hut employee. Further, Perisic must show that he was performing his job in a satisfactory manner. The record before this Court suggests Perisic was not performing satisfactorily. The record shows several instances of warnings, poor performance and insubordination. In short, Perisic has not sustained his burden of establishing a prima facie case of retaliation. And, even if that burden had been met, Pizza Hut has stated a legitimate non-discriminatory reason for terminating Perisic: his poor work performance. Perisic has failed to demonstrate that reason is pretextual.

As explained above, Perisic's retaliation claim fails under both the direct and indirect methods of proof. Accordingly, summary judgment in favor of Pizza Hut must be granted on Perisic's retaliation claim.

**CONCLUSION**

For the aforementioned reasons, the Defendant's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART.** Summary Judgment is **GRANTED** on Perisic's Retaliation claim and **DENIED** on Perisic's FMLA Interference claim.

**DATED: February 21, 2013**          **/s/RUDY LOZANO, Judge**
                                                   **United States District Court**